SCHWARTZBERG v. MAPES CONSOL. MFG. CO. et al.

No. 6238.

Circuit Court of Appeals, Seventh Circuit.

Jan. 5, 1938.

Clifford C. Bradbury and Warren C. Horton, both of Chicago, Ill., for appellant.

Stephen H. Philbin, of New York City, and Cromwell, Greist & Warden, of Chicago, Ill., for appellees.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

By this action appellant sought injunctive relief and an accounting for alleged infringement of United States Patent No. 1,464,628, issued to him on August 14, 1923, upon application filed June 27, 1921.

The defenses were invalidity and noninfringement. The court found for appellees as to both and from that decree this appeal is prosecuted.

The patent relates to packing and storing receptacle boxes, and more particularly to a cushioning device to be placed in any convenient place in the container in order to permit cushioning of the articles placed therein. Another object of the invention is said to be the provision of a structure in such device that will permit circulation of air below the device for the purpose of ventilating the receptacle and permitting air circulation about its contents. It is said that the device is capable of employment in connection with boxes of candy, egg cases, and any type of container adapted to receive and store articles in a cellular structure.

The cushion preferably comprises a rectangular plate formed of a sheet of strawboard, cork, wood or any suitable material, that is substantially flat upon its upper surface. It is provided with a plurality of large recesses or apertures, and intermediate these are smaller apertures that extend entirely through the structure. For an egg case the large recesses are arranged in six rows, with six in each row, and are slightly smaller in diameter than that of an egg. The edges of these recesses, upon the upper face of the structure, are countersunk, if preferred, so as to avoid presenting a sharp corner to the article contained in the receptacle. When the small apertures are formed, the material between them provides feet upon the bottom of the plate, and the space surrounding these apertures is cut away, about two-thirds the thickness of the material, to provide channels that divide the feet from each other in each direction.

Concaved portions are provided in the edges of the structure to facilitate the removal of the cushion, and widened channels divide the feet which are provided along the longitudinal and transverse edges of the structure. The channels referred to afford continuous passageways for air to circulate throughout the under portion of the cushion, and the corners of the cushion are provided with substantially square feet.

When the cushion has been placed, with the feet down, in a section of an egg crate, an ordinary flat, which is a piece of cardboard or strawboard about twelve inches square, usually of three-ply fibre board, is placed upon the top element, after which the cellular sections for the eggs are superimposed thereon with a dividing flat between each cell section. The bottom layer or tier of eggs rests upon the lowermost flat, and the eggs are positioned above the large recesses or apertures in the cushion structure, so that the bottom tier will be afforded a slight cushion and prevented from breaking.

The structure may be modified by making the recesses or large openings angular instead of circular. The feet and the concave portions of the edges of the structure may likewise be made rectangular, and further modifications are possible without departing from the principles said to have been disclosed.

Claims 1, 2, 6 and 7 are said to be infringed by appellees' devices. Claim 1 is conceded to be typical and reads as follows: "A cushion for cellular packing receptacles comprising a substantially flat plate, and elongated feet extended longitudinally and transversely upon the bottom of said plate." The other claims in suit are likewise limited to such feet, and two of the claims refer to ventilating passageways in a plurality of directions caused by the intersecting rows of feet.

The court found that the patent was invalid for lack of invention in view of United States patents to Tipton, No. 254,517; Ellis, Nos. 385,450 and 385,451; Gilpin, No. 559,776; Weis, No. 894,924; Miller, No. 1,026,359; White, No. 1,324,708; and Mann and Koppelman, No. 1,413,047. None of these patents was cited or considered by the Patent Office with respect to the patent in suit.

The Tipton patent discloses a corrugated flat used as a cushion, which supports the egg by resilience. The air spaces under the bottom layer of eggs are in one direction only, instead of the longitudinal and transverse grooves of appellant.

The first Ellis patent discloses a cushion with what he terms "extra pieces," but which in fact are feet. The cushion is a flat, with square pieces or feet, and is used both at the top and bottom of the case, the feet thus providing both a cushioning and a ventilating effect. The second Ellis patent is quite similar to the first. Its feet,

however, are hollow, thus furnishing a more yielding and better cushioning medium than the solid feet of the first. The cushions of Ellis were proposed by him for use in cardboard cartons rather than in wooden crates, but they both disclose cushions with feet which provide some little circulation of air. Ellis also discloses square feet as distinguished from appellant's elongated feet, but we think neither this difference, nor the fact that the Ellis cushions are too small to be used in the usual wooden egg crates, constitutes a sufficient basis for inventive genius.

The Hargiss patent, No. 534,877, disclosed a wire frame with feet in the shape of loops of wire upon which the egg flat rests, and resiliency is obtained from the flat on top of the feet, and not from the feet. The latter statement is true with respect to appellant's structure if he used wood or cork. While appellant's claims are not limited to any kind of material, yet he states in the specification that his improved cushion preferably comprises a plate formed of a sheet of strawboard, cork, wood, or any other suitable material. His claims which are not in suit refer to the cushion plate as a substantially stiff or rigid element, and those which he first made and attempted to sell were made of cork, and they were of a substantially stiff and rigid character. Of course, the claims not here relied upon are not in issue, but when considered in explanation of the specification, together with appellant's reduction to practice, we are convinced that his dominant thought was to get his resiliency from the flat on top of the feet. We think it does no violence to his intention to say that the phrase "or any other suitable material" was intended by him to mean any other like suitable material. Otherwise we think his claim clearly would be too broad in view of the art. Hargiss, it is true, makes no mention of air spaces beneath the eggs in his device, but they are there nevertheless. True his devices would be too expensive for commercial use, and the metal loops would easily bend in handling, and would pierce a wet flat, but notwithstanding these very objectionable features, his wire feet would provide support and ventilation as effectively as appellant's disclosure.

The Gilpin patent discloses an egg crate with "a simple cushion for supporting and protecting," consisting of a pasteboard sheet, or other material to provide "a yielding cushion," which rests upon longitudinal feet, which in turn constitute longitudinal air channels. Appellant contends that these longitudinal air channels are not feet; that they would really prevent the circulation of air; and that they do not have what appellant chooses to call the "knee action" which he says is present in his structure. Gilpin's cushion consists merely of a sheet of pasteboard, thick paper, or similar sheet material, corrugated, or fluted, or grooved longitudinally so as to form four platforms of equal width extending the full length of the sheet. These platforms are separated one from the other by the narrow corrugations or grooves which are of uniform width, so slanted at the sides of the grooves that the sheets may be nested for transportation. When the cushion is in use the grooves rest upon the base of the crate and support the platforms which in turn support the eggs, and air will circulate longitudinally, but not otherwise, underneath the platforms between the grooves. We perceive no reason why these grooves should not be properly called feet, for they perform the same functions as those of appellant's structure. Excessive weight, of course, would crush the groove, just as it would appellant's elongated feet, and to that extent the circulation would be hindered.

The Weis patent discloses an egg crate with a corrugated pad as a cushion, having feet. The feet and the longitudinal air channels between them do not run entirely across the cushion, as in Gilpin. They are interrupted, so that air can circulate from one channel to another. Appellant makes much the same objections to this cushion as he does to Gilpin and contends that it has all the objectionable features of the ordinary corrugated paper cushion. We think a fair preponderance of the evidence disclosed by the record shows that corrugated cushions are now in wide and successful use and have been for many years, and that appellant's structure has had practically no commercial use since 1922. That the Weis disclosure has feet is unquestionably supported by the evidence. Other objections urged to Weis were fairly proven to apply with equal force to the patent in suit.

The Miller patent shows a cup flat which is used not only as a flat but also as a cushion, two being placed back to back with the cup downward. Appellant contends that Miller does not disclose the con-

struction claimed in the patent in suit. Appellees concede this to be true, because Miller does not show elongated longitudinal and transverse feet, and for the same reason appellees insist that their structures do not show appellant's claimed construction. Appellant further contends that his structure is to be distinguished from Miller in that in Miller there can be no circulation around the eggs. This is likewise conceded by appellees, and they point out the same distinguishing characteristic between appellant's structure and theirs. Appellant urges also that in Miller there can be very little, if any circulation of air in the bottom of the case because of the fact that he uses an inverted cup flat for cushioning purposes. The uncontroverted evidence in this respect shows that air can accumulate around the cup between the case and the under part of the cushion, and while no substantial circulation of air would contact that part of the egg resting in the cup, that fact would not prevent air from circulating around the cup when it was reversed and used as a cushion. What has been said with respect to Miller applies to the Mann patent inasmuch as he likewise discloses cup flats for cushions.

The White patent has elongated, longitudinal and transverse ridges in the bottom and top of an egg carton. These ridges are no part of the flat which directly supports the eggs, but they support the flat and perform the function of feet as well as if they were attached to the flat. The patent states: "These ridges are resilient and those of the bottom serve to yieldably support the contents of the case above the bottom and to absorb shocks, and the ridges of the cover also serve to · absorb shocks * * *" True, as appellant urges, the ridges or feet of this structure would be much too small for use in a large standard crate, but that criticism does not avoid White's disclosure of using longitudinal and transverse feet for resiliency. That mere enlargement of elements would not amount to invention was clearly understood and expressed by White in the following: "I would have it understood that changes may be made in the form, proportion and construction of the several parts without departing from the spirit of my invention * * *"

The file wrapper history of the patent supports us in construing the claims quite narrowly. Claim 8, as amended, was: "A cushion for cellular packing receptacles comprising a substantially flat plate provided with a plurality of recesses, and an imperforate flat disposed thereon and coextensive therewith." Claim 9, as amended, was "A cushion for cellular packing receptacles comprising a substantially flat plate, and means for 'spacing said plate above the bottom of the receptacle and providing air passageways thereunder in a plurality of directions." It is to be noted that neither of these claims was limited to any kind or arrangement of feet. They were both rejected and cancelled, and the patent was allowed, without reference to the prior art patents hereinbefore discussed, upon the claims which are specifically limited to feet extending longitudinally and transversely.

From a consideration of these prior art patents we feel constrained to hold that appellant's disclosures presented nothing new in the art, and that the District Court correctly held that the patent was invalid for lack of invention.

If it be conceded, however, that the patent is valid, we think it is clear that appellees' structures have not infringed it, because there is no identity of means, operation and result. Weil Pump Co. v. Chicago Pump Co., 7 Cir., 74 F.2d 13. ·

Appellant recommends strawboard, cork, wood or any other suitable material. He used cork and a three-ply fibre board for his flats. The latter has some resiliency and thereby furnishes a slight cushion, there being nothing said in the patent with respect to any cushioning effect except in connection with the flat. Indeed the rigidity of the cushion is stressed in the patent. Appellees' cushion pads are made of paper pulp and yielding to pressure. Appellant has a flat supported by a cushion, while appellees' pad both holds the eggs and provides a cushioning support on their bottoms. Appellant requires eighty-eight feet which are solid, elongated, not tapered, and extend longitudinally and transversely, while appellees require forty-nine feet which are hollow, pointed, tapered, and run in one direction only.

The District Court quite aptly, we think, contrasted the disclosure of the patent with appellees' structure, in the following language:

"Plaintiff seemed to lay great store upon his so-called knee action, but when I look at the drawings, and read the wording

of the patent, and consider the models which he made at or about the time of the procuring of the patent, I can't see that he had knee action in mind, or that any considerable amount thereof was possible under the device as he visioned it. What he had in mind was lifting the lowermost so-called flat a sufficient distance above the bottom of the case, that there would be opportunity for some ventilation thereunder, and also opportunity for some movement of the flat opposite the apertures or depressions in the so-called cushion. The cushioning effect came from the movement of the flat over the depressions or apertures in the so-called cushion.

"The defendants' device apparently relies upon some elasticity, not only in the protuberances from the bottom of the cushion, but also upon the character of the material in the upper portion thereof, as well as that in the lower portion thereof. The whole of the cushion is a sort of a cushion; it is flexible, and in a measure elastic, and it does have this characteristic which has been referred to as knee action, and which I have said is absent in the plaintiff's patent."

Decree affirmed.